UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH H.,

        Plaintiff,

    v.                                     **DECISION AND ORDER**

                                                    23-CV-833S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Elizabeth H.[1] brings this action, pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her applications with the Social Security Administration on September 10, 2020. Plaintiff alleged disability beginning on January 14, 2020, initially due to major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), borderline personality disorder, post-partum vascular disease, headaches, and urge incontinence. Plaintiff's applications were denied and she thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On April 20, 2022, ALJ Victoria Ferrer held a telephonic hearing due to COVID-19 pandemic at which Plaintiff—represented by counsel—and Vocational Expert

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

Dale Pasculli appeared and testified. (R.[2] at 15, 42-95.) At the time of the hearing, Plaintiff was a 31-year-old woman with a high school education and past work experience as a collection clerk, order clerk, and laborer-stores. (R. at 33.)

4. The ALJ considered the case *de novo* and, on June 1, 2022, issued a written decision denying Plaintiff's applications for benefits and finding that Plaintiff could perform all exertional levels of work (R. at 15, 22-23). After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed her action challenging the Commissioner's final decision.[3] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8, 10.) Plaintiff filed her Response on January 31, 2024 (Docket No. 11), declaring that a reply was not necessary (id. at 1). This Court then took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's June 1, 2022, decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

  10. Although the claimant has the burden of proof at the first four steps, this burden shifts to the Commissioner at the fifth and final step. See Yuckert, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity (or "SGA") since the January 14, 2020, onset date. Plaintiff, however, reported to consultative examiner, Gregory Fabiano, Ph.D., that she worked full-time as a pharmacy lab technician since November 1, 2020, and later told consultant Janine Ippolito, Psy.D., that she worked until June 2021 in a series of short-term jobs. The ALJ, however, declared that Plaintiff did not engage in substantial gainful activity because her employment during this post-January 2020 period was "very short-term and her earnings were below SGA levels." (R. at 15, 18-19; see R. at 831, 883.)

12. At Step Two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, PTSD, and borderline personality disorder. (R. at 19.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20-22.)

13. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels with limitations restricting Plaintiff to perform only simple, repetitive jobs. The ALJ further determined that Plaintiff could understand, remember, and carry out simple instructions and make decisions on simple matters. The ALJ, however, found that Plaintiff could not work in fast paced, high production demand jobs such as in assembly line work, while she could meet production quotas in a shift. The ALJ found that Plaintiff could not interact with the public or perform team tasks with coworkers but could adapt to infrequent changes in the work setting. (R. at 22-23.)

14. At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a collection clerk, order clerk, or laborer. (R. at 33.) At Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 33-34.) The ALJ came to this determination by posing hypotheticals to the Vocational Expert of a claimant sharing Plaintiff's age, education, work experience, and RFC. The Vocational Expert opined that this hypothetical claimant could perform such jobs as an addresser, photocopying machine operator, and automobile detailer. (R. at 34.) Accordingly, the ALJ found that Plaintiff was not disabled. (R. at 34-35.)

15. For applications filed after March 27, 2017, Social Security regulations require that the agency consider the persuasiveness of medical opinions. See, e.g., 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The Social Security Administration does not defer or give any specific evidentiary weight to any medical opinion, id. §§ 404.1520c(a), 416.920c(a), but considers the supportability and consistency of the opinions as the most important factors in assessing that opinion's persuasiveness, id. §§ 404.1520c(c)(1), (2), (b)(2), 416.920c(c)(1), (2), (b)(2). The ALJ must explain her approach with respect to supportability and consistency when considering a medical opinion. Melissa F. v. Comm'r, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021). The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive the opinion would be, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more relevant the objective medical evidence and supporting explanations presented by the medical source in support of her opinion,

the more persuasive that medical opinion would be.  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).

16. Plaintiff now argues that the RFC is not supported by substantial evidence because the ALJ failed to reconcile it with Dr. Fabiano's consultative opinion and improperly rejected the findings of Lakeshia Young, LMSW, of Spectrum Health and Human Services (or "Spectrum Health").  For the reasons that follow, these arguments fail.

17. First, Dr. Fabiano examined Plaintiff on December 13, 2020, and opined that she did not appear to have evidence of limitation in her ability to understand, remember, and apply simple or complex directions, and use reason and judgment to make work-related decisions.  Nor did Dr. Fabiano find evidence of limitations in Plaintiff sustaining concentration, performing a task at a consistent pace, working at an ordinary routine and regular attendance at work, and maintaining her personal hygiene. Dr. Fabiano, however, found that Plaintiff appeared to have moderate limitations in her ability to interact adequately with supervisors, coworkers, and the public, to regulate her emotions, to control her behavior, and to maintain her own well-being.  Nevertheless, the doctor concluded that these limitations did not appear to be significant enough to interfere with Plaintiff's daily functioning.  (R. at 834.)

18. The ALJ found Dr. Fabiano's opinion persuasive because it was based on Plaintiff's normal mental status examination findings.  (R. at 26-27.)  Upon the totality of the evidence, the ALJ concluded that Plaintiff's limitations restricted her to simple work without performance of fast-paced work due to her problems regulating her emotions.  (R. at 27.)

19. Plaintiff now faults the ALJ for finding Dr. Fabiano's opinion to be persuasive yet not adopting the moderate limitations for interaction with superiors found by Dr. Fabiano and counters that mere limitation of Plaintiff to simple work did not address this limitation. This Court, however, disagrees.

20. This Court finds that the ALJ appropriately considered Dr. Fabiano's opinion regarding Plaintiff's moderate limitations. The ALJ's assessment is supported by the doctor's finding that although Plaintiff had limitations they did not interfere with her functioning. (R. at 26-27, 834.)

21. Courts recognize that moderate limitations are "appropriately accommodated by a limitation to unskilled work." Melissa L. v. Comm'r, No. 6:20-CV-06667-EAW, 2022 WL 593452, at *6 (W.D.N.Y. Feb. 28, 2022) (citing cases). While confronted with conflicting medical evidence and medical opinions that a claimant had moderate limitations, the ALJ's determination that this person could perform unskilled work is well supported. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010); Washburn v. Colvin, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017) (moderate difficulties with respect to supervision were consistent with unskilled work requiring no interaction with the public).

22. Notwithstanding Plaintiff's nonexertional limitations, the ALJ here appropriately found that she still could perform simple work. (R. at 22-23.) This conclusion accommodated her moderate limitations for social interactions. See Melissa L., 2022 WL 593452, at *6. Furthermore, Plaintiff's mental health examinations support the ALJ's finding because they revealed Plaintiff's normal speech, good eye

8

contact, cooperative and calm behavior, all facets for appropriate social interaction. (R. at 833-34, 905, 1071-72, 1080-81, 1101.)

23. Therefore, Plaintiff's Motion for Judgment on the Pleadings on this issue is denied and Defendant's Motion for Judgment on the Pleadings is granted.

24. Next, Plaintiff argues that the ALJ improperly rejected LMSW Young's April 6, 2022, disabling opinion because it may have been based on an incomplete treatment record. LMSW Young was answering a Social Security Mental Impairment Questionnaire for Plaintiff, in which she found that Plaintiff had extreme difficulties in maintaining social functioning, concentration, persistence, and pace, with one or two episodes of decompensation within a 12-month period. (R. at 1060, 1064.) She also found Plaintiff seriously limited in understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals, and dealing with stress of semiskilled and skilled work based on Plaintiff's reports of having difficulty going outside of her home, having low energy, anhedonia, depressed mood, increased anxiety, history of panic attacks, and isolation.

25. LMSW Young diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, PTSD, and borderline personality disorder. (R. at 1060.) She noted Plaintiff's decreased energy, emotional withdrawal or isolation, and recurrent severe panic attacks and found that Plaintiff's panic attacks and symptoms of agoraphobia resulted in limitations in her ability to complete unskilled work. (R. at 1061-62.) LMSW Young observed that Plaintiff was seriously limited in understanding and remembering very short and simple instructions or understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention for two-hour

segments, maintaining regular attendance, or completing a normal workday and workweek without interruptions from psychologically based symptoms. (R. at 1062, 1063.) Plaintiff also had serious limitations in performing at a consistent pace without unreasonable number and length of rest periods, and getting along with coworkers without unduly distracting them. LMSW Young found that Plaintiff was seriously limited in dealing with normal work stress or responding appropriately to changes in a routine work setting, and unable to meet competitive standards of employment for interacting appropriately with the public, maintaining socially appropriate behavior, or travelling to unfamiliar places due to her PTSD, depression, and anxiety. (R. at 1063.) LMSW Young concluded that Plaintiff had extreme limitations in maintaining social functioning and maintaining concentration, persistence, or pace, noting that Plaintiff had one or two episodes of decompensation. (R. at 1064.)

26. LMSW Young based her diagnoses on Plaintiff's one year of treatment at Spectrum Health including her personal counseling of Plaintiff starting in January 2022. (R. at 1060; see R. at 29.)

27. The ALJ found unpersuasive LMSW Young's opinion and findings because LMSW Young did not state the number of times she counseled Plaintiff and did not include any treatment notes to substantiate her opinion. (R. at 29-30.)

28. The record, however, contains treatment notes from Spectrum Health for sessions held on May 4, 2021, June 23, 2021, December 19, 2021, and April 25, 2022, within the one-year period LMSW Young said Spectrum Health treated Plaintiff (R. at 896-910, 1070-86) but did not contain treatment notes signed by LMSW Young.

29. During the April 20, 2022, administrative hearing, Plaintiff's counsel conceded that "there seem[ed] to be a limited amount of records" from LMSW Young and Spectrum Health because there were no treatment notes from LMSW Young in the record. (R. at 46, 47.) Counsel indicated that she had reached out to Spectrum Health to confirm the completeness of the record but indicated that she would seek any additional information from LMSW Young and Spectrum Health. The ALJ granted Plaintiff leave to complete that search. (R. at 46-47, 95.) Plaintiff's counsel reported on May 4, 2022, that all records that she was aware of were submitted without tendering additional records from LMSW Young. (R. at 438.)

30. Courts have held that an ALJ does not err in failing to develop the record "where claimant's counsel advises she is seeking the missing record, the ALJ keeps the administrative record open to allow for supplementation, but counsel never submits the additional records, and the claimant never requests the ALJ's assistance in obtaining the records." Perry v. Saul, No. 19-CV-525F, 2020 WL 5544347, at *5 (W.D.N.Y. Sept. 16, 2020); see Jordan v. Comm'r, 142 F. App'x 542, 543 (2d Cir. 2005). The ALJ does not need in that instance to independently attempt to obtain putative records. Perry, 2020 WL 5544347, at *5.

31. In the present case, the ALJ granted Plaintiff leave and an additional two weeks to supplement LMSW Young's findings or request additional time to do so. (R. at 46-47, 95.) Plaintiff, however, later reported that all records were submitted and did not seek more time or assistance to find more records. (R. at 438.) Plaintiff thus was aware of the state of this record and now is bound by what was presented to the ALJ.

Accordingly, this Court concludes that the ALJ fulfilled her duty in developing the administrative record.  Jordan, 142 F. App'x at 543; see Perry, 2020 WL 5544347, at *5.

32. This Court also finds that LMSW Young did not report the frequency of Plaintiff's counseling sessions with her nor did she claim that her opinion was a summary of the findings of Spectrum Health and her colleagues.  Absent treatment notes from LMSW Young, this Court concludes that there is no evidence supporting her April 2022 opinion.  See 20 C.F.R. §§ 404.1520c(b)(2), (c)(1), (c)(3)(ii), (d) (evidence from nonmedical sources), 416.920c(b)(2), (c)(1), (c)(3)(ii), (d) (same).  Spectrum Health's presented treatment notes, however, showed Plaintiff had overall normal mental status examination results and adequate control of her symptoms when medication was taken as prescribed.  (R. at 905, 1071-72, 1080-81, 1101.)

33. Given the record as proffered by Plaintiff, this Court further holds that the ALJ considered LMSW Young's opinion appropriately.

34. Plaintiff alternatively argues that the ALJ gave vague and conclusory reasoning that did not adequately explain her rejection of LMSW Young's opinion.  This Court disagrees.  Plaintiff presented a deficient record of LMSW Young's treatment of her where it is unknown how many times LMSW Young treated Plaintiff.  (R, at 30.)  The ALJ did not need to provide evidence contrary to LMSW Young's opinion.  Rather, Plaintiff bears the burden of establishing her disability at Steps One through Four of the sequential analysis and specifically presenting medical evidence in support of the opinion.  The absence of treatment or counseling notes from LMSW Young is crucial to any reliance upon her opinion.

35. This Court holds that the ALJ's consistency finding thus was not vague or conclusory. The limited evidence here from Spectrum Health showed that Plaintiff's condition was normal and less severe than opined by LMSW Young. Plaintiff also has not identified evidence consistent with LMSW Young's more severe limitations or shown that this opinion was consistent with the consultative opinions of Drs. Fabiano and Ippolito noted above.

36. Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds no error in the ALJ's determination. The ALJ properly accounted for Dr. Fabiano's opinion of moderate limitation by limiting Plaintiff to performing simple work. The ALJ also properly assessed the opinion of LMSW Young upon the absence of supporting treatment notes.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: September 30, 2024
Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge